Suran KLOIAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22511.

United States Court of Appeals Fifth Circuit.

July 27, 1965.

Emmet J. Bondurant, Atlanta, Ga., for appellant.

J. O. Sentell, Asst. U. S. Atty., Ben Hardeman, U. S. Atty., Montgomery, Ala., for appellee.

Before TUTTLE, Chief Judge, BELL, Circuit Judge, and DYER, District Judge.

GRIFFIN B. BELL, Circuit Judge:

This appeal is from the judgment of the District Court denying appellant's motion under 28 U.S.C.A. § 2255 to vacate his conviction and sentence. Appellant is incarcerated under a four year mail fraud sentence imposed by the United States District Court for the Middle District of Alabama on a plea of guilty after the case was transferred for plea and sentence to that court from the Western District of Texas on motion of appellant under Rule 20, F.R.Crim.P.

■ The motion to vacate is based on the contention that the two-count information upon which the plea was entered failed to charge a violation of the Federal Mail Fraud statute, 18 U.S.C.A. § 1341.[1] And it is clear that appellant may attack the conviction and sentence imposed under such circumstances in the event the contention is meritorious. Stinson v. United States, 5 Cir., 1963, 316 F.2d 554; Dawes v. Gough, 5 Cir., 1948, 170 F.2d 396; Aderhold v. Schiltz, 5 Cir., 1934, 73 F.2d 381. We proceed then to the merits of the motion.

Appellant's position rests entirely on the proposition that Parr v. United States, 1960, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277, is controlling to the end that activity of the type charged against him does not constitute an offense against the laws of the United States. The position of the government, on the other hand, is that the case is controlled by our recent case of Adams v. United States, 5 Cir., 1962, 312 F.2d 137. Both cases involved, as does this case, the unauthorized use of gasoline credit cards and the subsequent mailing of invoices covering purchases.

In Parr, two holders of offices of trust in a School District were charged with using the mails to defraud by obtaining gasoline and related products on the account of the School District for their personal use. They were authorized to use the credit cards for District purposes. The violation of the mail fraud statute was said to have arisen through the use of the mails in billing the School District, and in transmitting payment from the District to the oil company. The Supreme Court reversed the affirmance of the convictions on these charges by this court. Parr v. United States, 5 Cir., 1959, 265 F.2d 894. The essence of the Supreme Court holding was that the scheme of the office holders to defraud was directed against the School District and accomplished through the abuse of their offices. The use of the mails was so incidental in the execution of the scheme as to lack sufficient nexus to the use of the mails. The use of the mails was not an integral part of the scheme to defraud as planned and executed by the defendants. This reasoning followed from the holding of the Supreme Court in Kann v. United States, 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, that the mail fraud statute is applicable only in those limited instances in which the use of the mails is a part of the execution of the fraud, with other cases being left to the states for disposition. There, corporate officers had imposed on the corporation for their own gain and the mails were used only incidentally in the forwarding of checks representing the gains from banks where they were cashed to other banks for collection. The scheme had reached fruition and come to a complete rest prior to the mailings in question.

United States v. Sampson, 1962, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136, is somewhat interpretive of the Supreme Court's concept of the applicability of the

---

1. Appellant is confined in the United States penitentiary, Atlanta. A letter from him to the District Court for the Northern District of Georgia asserting the complaint now under consideration was treated as a petition for habeas corpus.

That court concluded that there was substantial merit in appellant's position but denied relief for the reason that his remedy was by motion under 28 U.S. C.A. § 2255 to the sentencing court.

mail fraud statute in the Parr and Kann cases. There the mails were not used in originally obtaining the funds through fraud but were used to lull the victims of the fraud into a feeling of false security, thereby preventing or delaying the discovery of the fraud. This came about through the sending of various documents amounting to assurances through the mails to the victims after the funds had been paid to the operators of the scheme. The court held that this use of the mails was an integral part of the operation of the scheme. These cases point out that the offense of using the mails to defraud consists of a scheme to defraud, and the use of the mails in the execution of the scheme. This question in the Kann, Parr, Sampson and Adams cases, all supra, centered on whether the use of the mails was an integral and material part of the scheme as planned and executed, or whether the scheme was independent of the use of the mail.

The Adams case is squarely in point except for the expanded facts developed from the evidence adduced on the trial which disclosed many purchases over and above the specific purchases charged in the indictment. Here we have only a guilty plea. The indictment there and the information here are for all relevant purposes the same. Both defendants were charged with a scheme to defraud the owners of credit cards, the oil companies issuing the respective credit cards, and distributors in the named states of the products of the oil companies. In each case the person owning the credit card reported that it had been lost or stolen, and the defendant was charged as a part of the scheme with making unauthorized purchases on the cards from the distributors of the oil company products. In Adams, three separate purchases were charged in the execution of the scheme. Each allegedly caused the mailing of the purchase invoices to the oil company. Here two separate purchases with attendant mailings were charged. In Adams, the purchases were spread over a period of slightly more than a month. Here they were over a period of approximately two weeks.

It is apparent here as it was in Adams that the scheme depended for its efficacy or execution on the use of the mails which inheres in the credit card system. The information charged appellant with using the credit card of another without authority, with representing himself as that person, and with having obtained the property of the oil company, its distributors and the credit card owner by such unauthorized uses and false representations. These were the operative facts of the scheme. Then it is charged that these activities caused the mailing of designated invoices reflecting the purchases as part of the execution of the scheme.

The reasoning of the court in Adams is apposite:

"* * * In our opinion, the important question is whether the use of the mails was significantly related to those operative facts making the fraud possible or constituting the fraud. In the present case, the essence of appellant's fraudulent scheme was the utilization of the practice of Gulf distributors to extend credit on the faith of Gulf credit cards. Were it not for that practice, appellant's scheme could not, of course, have existed. Appellant violated Sec. 1341, because the practice of extending credit was inseparably connected with the use of the mails to forward the sales slips to Gulf Oil Company. The fraudulent scheme was possible only because Gulf distributors extended credit, but extension of credit presupposed that the distributors would use the mails to forward the slips to Gulf for ultimate presentation to the card-holders. Appellant's scheme reasonably contemplated the utilization of a commercial practice which, taken in its entirety, embraced the use of the mails; and, at the very least, therefore, the use of the mails to forward the sales slips was an incident to a material part of the

scheme, viz., the extension of credit."
312 F.2d at 140.

 A credit card system as such was not in issue in Parr and Kann. There the fraud operated through the abuse of offices held by defendants. It sounded in larceny after trust. Here, as in Adams, the fraudulent scheme operated through the utilization of the credit card system and its use of the mails and we hold that the use of the mails was material to the scheme and the execution of it.

Affirmed.